| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| --- | --- | --- |
| | | SUPERIOR COURT DIVISION |
| | | 25CV057515-590 |
| COUNTY OF MECKLENBURG | | |

| WSOC TELEVISION, LLC, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | **DECARLOS BROWN** |
| v. | ) | **POSITION ON RELEASE** |
| | ) | **OF BODY WORN CAMERA** |
| JOHNNY JENNINGS, in his official capacity | ) | **VIDEOS** |
| as the Chief of Police of the Charlotte- | ) | |
| Mecklenburg Police Department, | ) | |
| Defendant. | ) | |

## NOTICE OF DEFENDANT, DECARLOS BROWN'S, POSITION ON COMPLAINT FOR RELEASE OF LAW ENFORCEMENT AGENCY RECORDINGS

WSOC Television has moved this Court for an order to release body-worn camera (BWC) and 911 recordings from August 22, 2025, surrounding the death of I.Z. The Defense urges this Court to deny the complaint at this time, for the reasons outlined below. To be clear, Mr. Brown does not ask for a permanent denial of the media's request. Rather, he argues that because of the preliminary nature of the criminal proceedings, release of the BWC at this time would result in irreparable damage to Mr. Brown's due process and fair trial rights for the reasons outlined below. In the alternative, Mr. Brown moves for a protective order.

I.   **Current procedural posture**

Mr. Brown was charged in state court on August 23, 2025, with (F) Murder. He was indicted in Superior Court for First Degree Murder on September 15, 2025. The Rule 24 hearing has been continued until April 30, 2026. This Court has jurisdiction to make all necessary Orders in this case.

On September 9, 2025, Mr. Brown also was charged in federal court by way of Criminal Complaint on September 9, 2025. The Complaint charged Mr. Brown with Terrorist Attack or Other Violence Against a Mass Transportation System, in violation of 18 U.S.C. § 1992(a)(7) and (b)(1). On October 22, 2025, Mr. Brown was Indicted by a federal grand jury with one count of Violence Against a Railroad Carrier and Mass Transportation System Resulting in Death in violation of 18 U.S.C. § 1992(a)(7), (b)(1), and (c)(1). The charges in the complaint and indictment arose from the same set of facts as the current state charges against Mr. Brown for first-degree murder. The federal indictment further provided notice of special findings under 18 U.S.C. §§ 3591 and 3592. Mr. Brown faces the death penalty if convicted in federal court. On December 11, 2025, Mr. Brown made his first appearance in federal court. He is now in the custody of the U.S. Marshals, thereby putting his state prosecution effectively on hold.

Mr. Brown only received the BWC in this case from the state on December 18, 2025. There were approximately 35 recordings provided.

I. **The media cannot meet its burden to prove that release of the BWC at this stage of the criminal cases against Mr. Brown is warranted under North Carolina law.**

North Carolina law explains that BWC recordings "are not public records." N.C. Gen. Stat. § 132-1.4A(b). While BWC may be disclosed to certain authorized persons, the media is not so authorized. N.C. Gen. Stat. § 132-1.4A(b)-(f). Rather, the media may only request release of a BWC by court order, and only if certain conditions are met. N.C. Gen. Stat. § 132-1.4A(g) (enacted 2016). When the media requests release of BWC by court order, this Court may "conduct an in-camera review of the recording." N.C. Gen. Stat. § 132-1.4A(g). And in considering whether release is appropriate, the Court must "consider the applicability of all of the following standards":

> (1) Release is necessary to advance a compelling public interest.
>
> (2) The recording contains information that is otherwise confidential or exempt from disclosure or release under State or federal law.
>
> (3) The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding.
>
> (4) Release would reveal information regarding a person that is of a highly sensitive personal nature.
>
> (5) Release may harm the reputation or jeopardize the safety of a person.
>
> (6) Release would create a serious threat to the fair, impartial, and orderly administration of justice.
>
> (7) Confidentiality is necessary to protect either an active or inactive internal or criminal investigation or potential internal or criminal investigation.
>
> (8) There is good cause shown to release all portions of a recording.
>
> The court shall release only those portions of the recording that are relevant to the person's request, and may place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate.

N.C. Gen. Stat. § 132-1.4A(g). Nothing in the statute "creates a presumption in favor of granting release requests." *Matter of McClatchey Co., LLC*, 386 N.C. 77, 93 (2024). It is within the trial court's discretion to weigh the applicable standards "based on the facts of a particular case." *Id.* It is requester's burden "to make the case for release." *Id.*

Here, release of the BWC to the media at this stage of Mr. Brown's criminal proceedings is inappropriate for several reasons.

3

First, release is unnecessary to advance a compelling public interest. N.C. Gen. Stat. § 132-1.4A(g)(1). While the First Amendment is undoubtedly a compelling public interest, a defendant's rights to due process and a fair trial supersede those to the public's right to access. *See Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). This is so, because "adverse publicity can endanger the ability of a defendant to receive a fair trial." *E.g., Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Irvin v. Dowd,* 366 U.S. 717 (1961); *Marshall v. United States*, 360 U.S. 310 (1959). *Cf. Estes v. Texas*, 381 U.S. 532 (1965). Indeed, "[t]he news media's access to the courtroom is subordinate to the defendant's right to a fair trial." *Dickinson Newspapers, Inc. v. Jorgensen*, 338 N.W.2d 72, 79 (N.D. 1983) (citing *Estes*, 381 U.S. 532 and *Sheppard*, 384 U.S. 333); *Palm Beach Newspapers, Inc. et al. v. Burk*, 504 So.2d 378, 380 (Fla. 1987) ("where a defendant's right to a fair trial conflicts with the public's right of access, it is the right of access which must yield."); *State v. Arguelles*, 63 P.3d 731, 757 (Utah 2003) ("A court may restrict media access altogether where necessary to assure that the defendant receives a fair trial ....")

Second, the bulk of the BWC contain interviews of witnesses at the scene. The photographic/video evidence of the witness is "otherwise confidential or exempt from disclosure or release under State or federal law." N.C. Gen. Stat. § 132-1.4A(g)(2). N.C. Gen. Stat. § 15A-904(a2) and (a3) significantly limits disclosure of identifying information of witnesses to crimes and none of the exceptions include videos or photos of the witnesses. What's more, disclosing video evidence of a witness at the scene of a traumatic event may harm the reputation or jeopardize the safety of a person" and counsels against release.

Third, the media cannot show that seeks release "to obtain evidence to determine legal issues in a current or potential court proceeding." N.C. Gen. Stat. § 132-1.4A(g)(3). The status of the legal proceedings in both state and federal courts are evident from the public dockets.

4

Fourth, release may harm the reputation or jeopardize the safety of a person—namely Mr. Brown, his family, local judges, the mayor, and the witnesses interviewed on camera. N.C. Gen. Stat. § 132-1.4A(g)(5). It goes without saying that this case is high-profile and has generated an unprecedented amount of media, and political, attention.[1] Mr. Brown's family has reported receiving death threats.[2] The mayor has also reported receiving threats, and it rumored that several judges involved with Mr. Brown's previous criminal cases also have received threats.[3] Social media is full of speculation as to why certain witnesses seemingly did not assist I.Z., as seen on released train video footage. Releasing the BWC of the incident at this early juncture in the case will only serve to further inflame the public such that the safety of Mr. Brown, his family, public political figures, and witnesses to the crime would be at risk.

Fifth, release would create a serious threat to the fair, impartial, and orderly administration of justice. N.C. Gen. Stat. § 132-1.4A(g)(6).

- Release of the BWC would impede Mr. Brown's ability to investigate his case and his constitutional right to present a defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967). Mr. Brown has not yet received discovery in this case. He only received the BWC at issue on December 19, 2025. He has not had an opportunity to identify or locate the witnesses in the BWC, much less interview them. He does not have the police reports or other discovery that would be necessary to properly investigate the information provided by the witnesses on the BWC.

- Release of the BWC would cause undue prejudice against Mr. Brown and would violate his Fifth and Sixth Amendment rights to due process and a fair trial. The Supreme Court

---

[1] A search for "Decarlos Brown" in the Charlotte Observer, for example, returned 147 results as of today's date.
[2] https://spectrumlocalnews.com/nc/charlotte/news/2025/09/17/sister-of-suspect-in-charlotte-stabbing-speaks-out
[3] https://www.facebook.com/WCNCtv/videos/charlotte-mayor-reveals-threats-she-faced-after-light-rail-killing-vows-transit-/1189724666591485/

has long cautioned that "[p]ublicity concerning the proceedings at a pretrial hearing ... could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial." *Press-Enterprise Co. v. Superior Court of Cal. for Riverside Co.,* 478 U.S. 1, 14 (19860 (quoting *Gannett*, 443 U.S. at 378). Because Mr. Brown has not been provided discovery, *see supra*, he has no way of determining at this time whether any of the BWC—including of any statements he may have made and any videos of witnesses—would be admissible at trial. Mr. Brown does not have the necessary information to determine, for example, whether a motion to dismiss any statements would be appropriate. *See* U.S. Const. amend. V; *Miranda v. Arizona*, 384 U.S. 436 (1966). Release of the videos to the media could influence any potential jury members and disclose information that the courts may otherwise deem admissible at a later date.

- Release of the evidence by the state court at this stage of the proceedings would create a serious threat to the fair, impartial, and orderly administration of justice to Mr. Brown's federal case, which is now the primary case for prosecution. If this Court grants the media's motion at this time, its decision will have irrevocable consequences to the federal district court's ability to protect Mr. Brown's rights to due process and a fair trial in that jurisdiction. A state court order granting release to the media will also taint the federal jury pool, thereby leaving the federal court with little recourse other than a change of venue.
- Finally, release at this stage of Mr. Brown's criminal cases would create a serious threat to the fair, impartial, and orderly administration of justice because it is premature. The

Defense has not located a case in North Carolina in which the BWC were released to the media at this early stage of the proceedings.

Sixth, confidentiality is necessary to protect either an active or inactive internal or criminal investigation or potential internal or criminal investigation. N.C. Gen. Stat. § 132-1.4A(g)(7). Based on information and belief, the federal and state authorities are continuing to investigate the crime in this case. Furthermore, as noted above, Mr. Brown has been unable to begin his investigation because he has not yet been provided with the vast majority of the discovery.

Seventh, the media has not shown "good cause" to release all portions of a recording. N.C. Gen. Stat. § 132-1.4A(g)(8). While there is undeniably interest in this case, that interest does not outweigh Mr. Brown's right to due process and a fair trial. Nor does it outweigh the interests of the private citizens on a majority of the BWC to abandon their right to privacy and safety.

In sum, the applicable standards this Court must consider when deciding whether to release BWC to the media do not support release in this case. There is no "presumption in favor of granting release requests." *Matter of McClatchey Co., LLC*, 386 N.C. 77, 93 (2024). And the risks of release—including irreparable damage to the defendant's rights to due process and to a fair trial, and the safety risks to multiple parties— far outweigh any public interest in the release of the BWC at this time. The media (WSOC) have failed to meet their burden "to make the case for release." *Id.*

**II.     Alternatively, this Court should enter a protective order to protect the identities of the witnesses and to preclude the media from publishing the content of any released BWC footage.**

Even if a court determines the moving part has met its burden to support release of BWC, wholesale release is not the default. The statute provides that the "court shall release only those portions of the recording that are relevant to the person's request, and may place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate." N.C. Gen. Stat. § 132-1.4A(g). Here, Mr. Brown argues that release of any of the BWC at this time would be inappropriate for the reasons outlined above. If this Court disagrees, however, Mr. Brown moves this Court for a protective order as follows:

- That this Court release only those portions of the many BWC videos relevant to WSOC's request; and,

- That the faces of any private citizen witnesses be redacted and/or blurred out of the videos prior to release. Likewise, that the personal identifiers of private citizen witnesses be redacted and/or blurred out of the videos prior to release. *See generally Courier-Journal, Inc. v. Shively Police Dept.*, 2022 WL 16842295 (Ky. Ct. App. 2022) (citing *New York Lawyers for Public Interest v. New York City Police Department*, 64 Misc.3d 671, 682-684, 103 N.Y.S.3d 275, 283-85 (Sup. Ct. 2019)); and,

- That WSOC may view the redacted/altered videos but it may not publish, broadcast, or otherwise disclose the content of the BWC until after Mr. Brown has been tried and sentenced in both the federal and state courts. *See Matter of McClatchey Company, LLC.*, 386 N.C. at 94 (approving that lower courts can "condition or restrict the release of contested recordings," including "limit[ing] the release of" certain recordings).

8

WHEREFORE, the defendant prays the Court to Deny the request to order the release of the Body Warn Camera video, or in the alternative to issue a Protective Order that limits the release. The defendant prays for all relief that is just and proper.

Respectfully submitted this the 4th Day of January 2026.

s// Daniel P. Roberts

_____

Daniel P. Roberts
Attorney for Decarlos Brown
Assistant Public Defender

CERTIFICATE OF SERVICE

Counsel does not have access to Civil Filings. The foregoing was served via email on January 4, 2026, to the following recipients via email:

Mr. Chase Stevens – Counsel for WSOC
chstevens@ktslaw.com

Judge Matthew Osman – Superior Court Judge Presiding
Matthew.j.osman2@nccourts.org

Ms. Jessica Battle – Counsel for Charlotte Mecklenburg Police
Jessica.Battle@cmpd.org

Ms. Lauren Newton – Counsel for Family of Iryna Zarutska
lnewton@tinfulton.com